AMERICAN HOME PRODUCTS COR-
PORATION and Boyle-Midway, Inc.,
Plaintiffs-Appellants,

v.

JOHNSON CHEMICAL CO., INC.,
Defendant-Appellee.

No. 290, Docket 78–7306.

United States Court of Appeals,
Second Circuit.

Argued Nov. 29, 1978.
Decided Dec. 13, 1978.

Morris Relson, New York City, for plaintiffs-appellants.

Howard Graff, New York City (Nemeroff, Jelline, Danzig, Graff, Mandel & Bloch, New York City, of counsel), for defendant-appellee.

Before LUMBARD, MOORE and GURFEIN, Circuit Judges.

GURFEIN, Circuit Judge.

Plaintiff-appellant Boyle-Midway, Inc. ("Boyle") is a wholly-owned subsidary of plaintiff-appellant American Home Products Corporation. Boyle manufactures and markets a line of insecticide products popularly known as "Black Flag." Defendant-appellee, Johnson Chemical Co., Inc. ("Johnson") has been selling a line of insecticides marketed under the registered trademark "King Spray" since 1963.

As part of its Black Flag insecticide line, Boyle, since May 1976, has produced and sold an insect trap under the coined brand name ROACH MOTEL. This product is an open-ended box containing an attractant for enticing waterbugs and roaches to enter, and a very sticky adhesive which holds and prevents the escape of the insect. No poison is used. The trap is so shaped as to inhibit exit even if the insect is not stuck on the adhesive.

The product did not originate with appellant but has been or is being sold by many competitors under different brand names.

Appellant was granted, on February 15, 1977, Trademark Registration No. 1,059,314 on the Principal Register for the mark ROACH MOTEL as used on "roach and water-bug traps."

Appellant uses on its ROACH MOTEL package and in advertising the slogan "Roaches Check In  .  .  .  But They

*Don't* Check Out" to reinforce the "motel" theme of the ROACH MOTEL mark. This is considered to be an attention-catching device.

The ROACH MOTEL traps have been sold throughout the United States. The first trap was sold in May 1976, and the product was launched nationwide in December 1976. There has been substantial advertising of this brand. In less than eighteen months, over $275,000 was expended for television and newspaper advertising. Nearly half of the newspaper and television advertising was for the New York area. In a period of only fifteen months, over 6,500,-000 traps were sold (in packages of two, retailing at under $1.00 per package). More recently, sales have been at the rate of $4,000,000 wholesale per year, corresponding to nearly 10,000,000 such insect traps annually. In the New York area this brand constitutes about 70% of all roach traps sold.

Defendant-appellee, located in Brooklyn, New York, sells disinfectants and insecticides. Its insecticides have been sold for some years under the KING SPRAY brand, shown on its packages with a crow, ribbon and triangle emblem. It had not previously sold insect traps.

In early March 1978, appellant heard that Johnson was planning to enter the insect trap market under the brand name ROACH INN. Appellant protested against Johnson's proposed use of ROACH INN and on March 16, 1978 requested appellee to avoid confusion by desisting from its plans. On March 21, 1978 Johnson refused, and on April 25, 1978 appellant found a sample of Johnson's ROACH INN trap in the marketplace. Johnson's product is packaged in a cardboard box which in addition to bearing the KING SPRAY mark, displays the name ROACH INN.

Appellant sued on April 24, 1978 in the Eastern District of New York, asking for injunctive relief against the defendant's use of the mark ROACH INN on a variety of grounds. Appellant filed a motion for a preliminary injunction on May 11, 1978, claiming relief under the Lanham Act, 15 U.S.C. § 1114(1), for statutory infringement of a word trademark, registered independently of its typography, display, or any special form of depiction.

Defendant Johnson submitted an opposing affidavit of Joseph Uddo, its president. Mr. Uddo explained that the "trade dress" of the ROACH INN product simulated the dress of all its own insecticides marketed under KING SPRAY. He did not adequately explain, however, why ROACH INN was used in addition to its customary brand name. While he stated that $30,000 had been spent for advertising its entry into the roach trap market, he did not indicate what part, if any, went to exploit ROACH INN.

The District Court (Chief Judge Mishler) heard oral argument without an evidentiary hearing. The court denied the motion for a preliminary injunction and this appeal followed, 28 U.S.C. § 1292(a)(1).

The court held that the two marks, from the stance of an ordinary purchaser, are not so similar as to produce a likelihood of consumer confusion. The court decided that it was the dominance of defendant's KING SPRAY trademark which rendered it probable that consumers would not be confused as to the source or origin of the product. It noted also that the roach trap container was designed so as to simulate the packaging of its entire KING SPRAY insecticide line, and that there were differences in the dress of the competing traps. The court noted that the label on defendant's package bears little resemblance to that on plaintiff's; defendant employs a yellow sleeve cardboard container, while plaintiff uses a black one; defendant features its KING SPRAY trademark and dress while plaintiff emphasizes the ROACH MOTEL mark; and the styles of the lettering and placement of words are wholly distinct.

The court determined that plaintiff's mark was "weak" because it was a descriptive mark, and that in such case, extensive advertising alone is not enough to establish that the public associates "ROACH MOTEL" with plaintiff's products. The court,

in so holding, acknowledged that "the goods are identical and channels of trade the same."

The question to which the defendant below did not address itself and to which the court, accordingly, made no reference, is this: If the defendant relied on its own mark KING SPRAY to denote the origin of its goods, why did it need an additional mark—ROACH INN—which comes so close to the plaintiff's conception?

In reviewing the denial of the injunction, we consider whether the District Court followed the correct principles of law in determining that the plaintiff's motion must fail for lack of likelihood of success. *Sonesta Int'l Hotels Corp. v. Wellington Associates*, 483 F.2d 247, 250–51 (2d Cir. 1973); *National Association of Letter Carriers v. Sombrotto*, 449 F.2d 915, 921 (2d Cir. 1971); *SEC v. North American Research & Dev. Corp.*, 424 F.2d 63, 85–86 (2d Cir. 1970). As we said in *Hills Bros. Coffee, Inc. v. Hills Supermarkets, Inc.*, 428 F.2d 379, 380 (2d Cir. 1970): "[W]here the denial rests on a finding (confusion of marks) which we may determine on an equal basis with the trial judge, we need not uphold the denial."

The test for the granting of a preliminary injunction is a showing that there is a probability of success upon trial, together with proof of irreparable injury to plaintiff if the defendant is not enjoined. *Triebwasser & Katz v. American Tel. & Tel. Co.*, 535 F.2d 1356, 1358 (2d Cir. 1976). There is no question that irreparable harm would result from a failure to enjoin if the plaintiff ultimately succeeds on the merits. *See Omega Importing Corp. v. Petri-Kine Camera Co.*, 451 F.2d 1190, 1195 (2d Cir. 1971). The vital issue is whether there is a probability of success upon trial.

In assessing that issue we start with the conceded fact that both of the insect traps involved are essentially the same product and are sold in the same channels of trade in New York. When there is such identity of goods, we need not go as far as we did in *Scarves by Vera, Inc. v. Todo Imports Ltd. (Inc.)*, 544 F.2d 1167 (2d Cir. 1976), where we had to find infringement with respect to non-identical goods.

We do not find the mark ROACH MOTEL to be a merely descriptive mark. While roaches may live in some motels against the will of the owners, motels are surely not built for roaches to live in. Hence the mark is fanciful in conception. Indeed, its very incongruity is what catches one's attention.

We think, therefore, that ROACH MOTEL is at least a suggestive mark, rather than a descriptive mark—if, indeed, it is not altogether an arbitrary mark.[1] *See West & Co. v. Arica Institute, Inc.*, 557 F.2d 338, 342 (2d Cir. 1977) (per curiam); *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9–11 (2d Cir. 1976); *cf. W. G. Reardon Laboratories, Inc. v. B. & B. Exterminators, Inc.*, 71 F.2d 515 (4th Cir. 1934) ("Mouse Seed" and "Rat Seed" for poison).

The fact that the Patent Office was willing to register ROACH MOTEL on the Principal Register creates a strong presumption of the validity of the mark, 15 U.S.C. § 1057(b); *Aluminum Fabricating Co. v. Pittsburgh v. Season-All Window Corp.*, 259 F.2d 314, 316 (2d Cir. 1958); *Pastificio Spiga Societa Per Azioni v. De Martini Marcaroni Co.*, 200 F.2d 325 (2d Cir. 1952), and rebuts the suggestion that the mark is "weak" on the ground that it is descriptive, since one of the grounds for refusal of registration is that a mark is "merely descriptive." 15 U.S.C. § 1052(e).[2]

---

1. As Judge Weinfeld put it in *Stix Products, Inc. v. United Merchants & Mfgrs., Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968):

   A term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods. A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods. (footnote omitted).

2. In the *Aluminum Fabricating Co.* case, *supra*, we went so far as to say: "[W]here it can be argued with equal force that a mark is descriptive and on the contrary that it is arbitrary and fanciful, the courts should not overrule the action of the Patent Office to whose care Congress has entrusted the preliminary determination as to whether a mark fulfills the requirements of the statute." 259 F.2d at 316.

Since we find the mark not to be "merely descriptive," no secondary meaning need be proved. It appears to us most likely that an ordinary consumer having read or heard on television the words "ROACH MOTEL" would remember the conception rather than the precise word. He would be unlikely to differentiate between "Motel" and "Inn" in his recollection. We think it more likely that he would recall simply a fanciful abode for roaches in an establishment normally frequented by human travellers.[3]

The use of different words with similar meaning may tend to confuse. *Hancock v. American Steel & Wire Co. of New Jersey,* 203 F.2d 737 (C.C.P.A.1953) ("Tornado" found confusingly similar to "Cyclone"); *S. C. Johnson & Son, Inc. v. Drop Dead Co.,* 210 F.Supp. 816 (S.D.Cal.1962), *affirmed,* 326 F.2d 87 (9th Cir. 1963), *cert. denied,* 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 177 (1964) ("Promise" infringed "Pledge"—label imitated); *cf. Florence Mfg. Co. v. J. C. Dowd & Co.,* 178 F. 73 (2d Cir. 1910) ("Sta-Kleen" infringed "Keepclean");[4] *Masterpiece of Pennsylvania, Inc. v. Consolidated Novelty Co.,* 368 F.Supp. 550 (S.D.N.Y.1973) ("Alpine King" infringed "Mountain King" for artificial Christmas trees).

One who adopts the mark of another for similar goods acts at his own peril and any doubt concerning the similarity of the marks must be resolved against him. *United States Time Corp. v. Tennenbaum,* 267 F.2d 327 (C.C.P.A.1959).

Nor does the juxtaposition of the KING SPRAY mark or the difference in the trade dress of the package foreclose a finding that there is a likelihood of confusion. *See*

*W. E. Bassett Co. v. Revlon, Inc.,* 435 F.2d 656, 662 (2d Cir. 1970). This could, indeed, be a bootstrap method of getting the public acquainted with its other KING SPRAY products through the purchase of ROACH INN traps. The test is not whether the consumer will know the difference if he sees the competing products on the same shelf. It is whether he will know the difference if "ROACH INN" is *singly* presented and he has heard of "ROACH MOTEL". *Sterling Drug, Inc. v. Lincoln Laboratories, Inc.,* 322 F.2d 968, 971 (7th Cir. 1963). The test of single presentation is even more cogent when the advertising is by radio, television and newspaper advertisements, as well as by consequent word of mouth. *See Hills Bros. Coffee, Inc. v. Hills Supermarkets, Inc., supra,* 428 F.2d at 381.

What appellant seeks to enjoin, moreover, is not the trade dress of its competitor but the word name it uses on its product. The word mark of appellant was granted registration independent of its depiction in any special form. *See* Patent Off. Rules, 37 C.F.R. § 2.51(d) (1977). The registrant is presumptively entitled to protection from a recent second comer's appropriation of the word mark by the use of a synonym on goods in direct competition. This is particularly true when no reasonable explanation is offered to show the second comer's need to come so close to the mark.

The order denying a preliminary injunction is reversed. The District Court should issue a preliminary injunction, as requested, requiring appellee to delete the words "ROACH INN" from the package sleeve

---

**3.** In *Hills Bros. Coffee, Inc. v. Hills Supermarkets, Inc., supra,* 428 F.2d at 380, we noted:
> [T]o the degree that the determination of likelihood of confusion rests upon a comparison of the marks as here . . ., the appellate court is in as good a position as the trial judge to decide the issue.

Hence, we need not distinguish every case that can be cited to show an allegedly different test of confusion. *See, e. g., Ye Olde Tavern Cheese Products, Inc. v. Planters Peanuts Div.,* 261 F.Supp. 200, 204–06 (N.D.Ill.1966), *affirmed,* 394 F.2d 833 (7th Cir. 1967).

**4.** There are many illustrations where similarity of meaning was held sufficient to warrant a finding of confusion, *e. g., Burger Chef Systems, Inc. v. Burger Man, Inc.,* 492 F.2d 1398 (C.C.P.A.1974) ("Burger Man" found to infringe "Burger Chef"); *International Postal Supply v. Pitney-Bowes Postage Meter Co.,* 38 F.2d 692 (C.C.P.A.1930) ("Seal-O-Meter" found to infringe "Mail-O-Meter"); *Mem Company, Inc. v. Hes Company, Inc.,* 149 U.S.P.Q. 8 (S.D. Cal.1966) ("London Leather" found to infringe "English Leather"); *Stamford Foundry Co. v. Thatcher Furnace Co.,* 200 F. 324 (S.D.N.Y. 1912) ("Messmate" found to infringe "Shipmate").

and to refrain from using the words in connection with the promotion and sale of insect traps.