**BERKSHIRE FASHIONS, INC., Plaintiff,**

v.

**SARA LEE CORPORATION, Defendant.**

No. 88 CIV 4197 (KC).

United States District Court, S.D. New York.

Dec. 4, 1989.

Denying amendment, —— F.Supp. ——.

Doreen J. Costa and Parker Bagley, Brumbaugh, Graves, Donohue & Raymond, New York City, for plaintiff.

James Swire, Gary M. Gertzog and Wendy L. Ravitz, Townley & Updike, New York City, for defendant.

## OPINION AND ORDER *

CONBOY, District Judge:

This is, in part, an appeal by Berkshire Fashions, Inc., ("Berkshire") from a decision ** of the Trademark Trial and Appeal Board ("TTAB" or "the Board") of the United States Patent and Trademark Office dated April 27, 1988, in Opposition No. 69,529, which sustained Sara Lee Corporation's ("Sara Lee") opposition to registration by Berkshire of the trademark ENERGIZER on gloves. The TTAB found a likelihood of confusion between Sara Lee's prior use and registration of the trademark SHEER ENERGY on pantyhose, and Berkshire's registration of and use of the trademark ENERGIZER on gloves. The TTAB further found that Sara Lee possessed superior trademark rights in the ENERGIZER mark through an assignment of rights in ENERGIZER as used on men's hosiery and men's and women's briefs from a third party, Alba Waldensian, Inc. ("Alba").

Neither party seeks damages, although both seek permanent injunctions against the other's use of certain trademarks, and each seeks recovery of its attorneys' fees. Berkshire seeks (a) a reversal of the TTAB's decision refusing registration of the ENERGIZER mark; (b) cancellation of U.S.Reg. No. 1,508,255 for the mark ENERGIZER for gloves, owned by Sara Lee, and (c) to enjoin Sara Lee from making further use of the ENERGIZER mark on gloves and slippers.

Sara Lee counterclaims, seeking to enjoin Berkshire from (a) use of the mark ENERGIZER on gloves and slippers, and (b) making false, misleading or unsubstantiated claims in its advertisements for ENERGIZER gloves and slippers.

The case was tried without a jury on September 26, 27, 28, 29 and October 3, 1989. On October 13, 1989 the parties submitted post-trial memoranda of law. This opinion shall constitute the Court's findings of fact and conclusions of law.

Berkshire is a New Jersey corporation, engaged in the importation and sale of women's accessories, including gloves, scarves, handkerchiefs, rainwear, umbrellas and bags. It currently employs 32 full-time employees, and has been marketing gloves and slippers bearing the ENERGIZER mark, the former since 1982 and the latter since 1986. Retail sales of the gloves total $36.2 million, and of the slippers $14.2 million.

Sara Lee is a Maryland corporation engaged in diversified businesses including the sale of bakery and foods products, lingerie, women's apparel, undergarments, pantyhose, gloves, slippers and men's and

---

\* This is a corrected text of the Court's Opinion and Order dated November 29, 1989.

\*\* The text of the Board's decision is found in the record of the trial proceedings as Defendant's Exhibit A, and we will refer to it herein as "Bd. Op."

boys' knitwear. It currently employs 100,-000 employees, and has been manufacturing and selling pantyhose and hosiery products bearing the marks SHEER ENERGY and SHEER ENERGY Pantyhose and Design since as early as 1972. Its retail sales of SHEER ENERGY pantyhose have exceeded $1.9 billion since 1980.

Sara Lee owns registered trademarks for SHEER ENERGY covering ladies hosiery and pantyhose; for SHEER ENERGY Pantyhose & Design, covering pantyhose; for SHEER ENERGY covering gloves; for SHEER ENERGY covering slippers; and for SHEER ENERGY covering lingerie; it asserts viable ownership, through assignment, in the marks ENERGIZER covering gloves and ENERGIZER covering men's and women's briefs. As indicated, the Board has sustained its rights to the use of its ENERGIZER mark on gloves and related products.

Sara Lee's SHEER ENERGY pantyhose have been for many years, and continue to be, broadly advertised through network television promotion, newspapers and magazines nationally and in store displays across the country. The yarns used in manufacturing SHEER ENERGY pantyhose create a compression on the leg which assertedly increases circulation, which is the basis for Sara Lee's advertising claim that this product produces energy (or perhaps the illusion of energy) in the legs of the wearer. The television ads, or spots, to use the argot of the trade, a number of which were viewed during the trial, are extremely effective in communicating this idea. Long-legged models ascend and descend stairs, sweep over pavements, and execute movements with the precision of acrobats, all choreographed to jazzy music and sleek sets, creating an impression of irresistible momentum and sheer energy. Since 1980, Sara Lee has expended $115 million in advertising its SHEER ENERGY pantyhose.

Berkshire has, from October, 1982, when it began marketing ENERGIZER gloves, to the present, conducted no advertising, either regionally or nationally, in any form, for these gloves, or for the more recently introduced ENERGIZER slippers. Sporadically, some retail stores carrying Berkshire products have mentioned some of them in sales announcement inserts in local Sunday newspapers. Some of this circular advertising done by the stores carrying Berkshire products was introduced during the trial, and it is primitive indeed.

Alba, Sara Lee's predecessor in interest in the ENERGIZER mark, had a substantial prior use of ENERGIZER for men's hosiery, registered on May 10, 1977. When Sara Lee learned of Alba's use of ENERGIZER in 1981, it sought to protect its own SHEER ENERGY mark and purchased Alba's mark and registration. It then granted a license back to Alba for use of the ENERGIZER mark on certain apparel products. However, on November 11, 1983, its ENERGIZER registration was cancelled because Sara Lee inadvertently failed to file the required Affidavit of Use under Section 8 of the Trademark Act. 15 U.S.C. § 1058.

In April, 1984, Sara Lee filed applications to register ENERGIZER covering men's and women's briefs, claiming first use at least as early as July 14, 1981, and the mark ENERGIZERS and Design covering men's and women's briefs and men's hosiery, claiming first use at least as early as February 16, 1983. The mark ENERGIZER was in actual use by Alba under the license at least until the fall of 1984. On August 6, 1986 Sara Lee terminated Alba's license to use its ENERGIZER mark on the ground of inadequate use, and on January 7, 1987 Sara Lee made a token shipment of gloves and pantyhose bearing its ENERGIZER mark. It then filed an application to register ENERGIZER for gloves on February 2, 1987 which registration was thereafter granted.

A leading line of ladies' support driving gloves, made of spandex elastic yarn, has for many years been sold under the trademark ISOTONER by Sara Lee's subsidiary, Aris Isotoner, Inc., one of the largest producers of gloves, and a direct competitor of Berkshire. In late 1986 Sara Lee's own L'eggs Products Division test marketed support gloves bearing the mark SHEER

ENERGY; in 1987 it commenced regional sales; and in 1988 it launched full scale nationwide sales in mass merchandise stores, food and drug stores, and by mail order. Late last year Sara Lee began marketing SHEER ENERGY slippers made of spandex elastic yarn in these same outlets. Sara Lee's SHEER ENERGY products and Berkshire's ENERGIZER products are in direct competition for the same class of purchasers in many national and regional mass merchandising chain stores, including K–Mart, Bradlees, Caldor, Target and Venture.

Berkshire was founded as a partnership in the early 1940's by the Dweck family, was incorporated as the Berkshire Handkerchief Co. by the Dwecks in the early 1950's and became the present Berkshire Fashions, Inc., in early 1982. In January of 1982 it directed its attorney to conduct a trademark search to determine the availability of the mark ENERGIZER for use in connection with the marketing of gloves. The search disclosed the aforementioned federal registration for ENERGIZER owned by Alba for men's and women's hosiery.

On May 17, 1982 Berkshire sought to register the mark ENERGIZER for gloves, claiming a first interstate use date of April 26, 1982, but was refused, based upon a likelihood of confusion with the Alba registration. When Alba's (Sara Lee's) registration was cancelled, Berkshire's previously refused registration application was approved, and published for opposition on April 17, 1984. Shortly thereafter, on July 2, 1984 Sara Lee filed formal opposition to Berkshire's application to register the mark ENERGIZER for gloves, asserting that it had prior use and registration of the mark SHEER ENERGY for pantyhose, and that it had in 1981 purchased from Alba the mark ENERGIZER for men's and women's briefs and men's hosiery. In 1986, Berkshire commenced nationwide sale of slippers made of spandex elastic yarn under its mark ENERGIZER. On April 27, 1988, four years after the case began, the TTAB rendered a decision in favor of Sara Lee, and two months later Berkshire initiated this action.

After careful review of the record below and our own trial proceedings, it is clear that when Berkshire adopted the mark ENERGIZER for gloves in 1982, it did so with knowledge of both Sara Lee's use of the closely similar mark SHEER ENERGY and Alba's registration of the identical mark for men's and boys' hosiery. Both marks utilize the root word energy and convey the sense of energizing impact, through fabric elasticity, upon the particular part of the body against which the product is worn, be it legs, hands or feet.

The products presently being sold under these competing marks by the parties are in the same relatively inexpensive price category, are directed to the same general class of potential consumers, and are in the same general channels of trade, that is, principally mass merchandising stores, secondarily, drug stores and supermarkets, and to a lesser extent mail order merchants.

We turn now to the legal standards that control this case. We are, of course, obligated to give to the findings of the TTAB great weight, in light of the Board's specialized expertise in resolving trademark disputes. *Murphy Door Bed Co. Inc., v. Interior Sleep Systems, Inc.,* 874 F.2d 95, 101 (2d Cir.1989). The Board's findings of fact are not to be disturbed unless "the contrary is established by testimony which in character and amount carries thorough conviction." *Wilson Jones Co. v. Gilbert & Bennett Mfg. Co.,* 332 F.2d 216, 218 (2d Cir.1964). This Berkshire has manifestly failed to accomplish. Indeed, the viability of the Board's findings have been, if anything, strengthened by evidence received at trial.

The principal and decisive factual finding of the Board, that Berkshire's use of the ENERGIZER mark is likely to cause consumer confusion with Sara Lee's marks SHEER ENERGY and ENERGIZER for the same and similar goods, is clearly correct.

The Board observed, without reference to whether the goods of the parties are competitive or move in the same channels

of trade, that to establish likelihood of confusion, it is sufficient "that the respective goods of the parties are related in some manner, and/or the conditions and activities surrounding the marketing of the goods are such that they would or could be encountered by the same persons under circumstances that could, because of the similarity of the marks used therewith, give rise to the mistaken belief that they originate from or are in some way associated with the same producer." Bd.Op., 16. The Board found, as we have confirmed, that both parties' goods are fashion accessories, are sold at relatively inexpensive prices in the same types of retail establishments and sometimes on the same selling floor or in closely proximate departments; that they are directed to the same purchasers; that they assertedly have an energizing effect upon that part of the body on which they are worn through the elasticity of the yarn or fabric used in their manufacture; and that this feature is the principal promotional claim of the parties in the marketing of their goods. The Board found, and we find as well, that Sara Lee's pantyhose/hosiery and Berkshire's gloves are sufficiently related in these circumstances that confusion is likely to occur if they were marketed under the same or similar trademarks.

The Board also found, as do we, that SHEER ENERGY "has achieved a significant degree of fame as a mark for pantyhose ... [and] that the public is likely to believe, because of the strength of [Sara Lee's] mark, that [Berkshire's] goods bearing the energy-type mark ENERGIZER are associated with or emanate from [Sara Lee]." Bd.Op., 18.

Furthermore, the Board concluded, as have we, that the use by Sara Lee's predecessor Alba of the mark ENERGIZER for men's hosiery and ladies' briefs, and of the mark ENERGIZERS for men's briefs, demonstrated by shipping records and product specimens sent to Sara Lee during the 1981 negotiation with Alba, establishes that Alba's use of these marks "is sufficient to demonstrate [Sara Lee's] priority of use in the mark ENERGIZER." Bd.Op., 21.

We are also satisfied, and find, in consonance with the Board's finding, that the evidence amply supports the conclusion that Alba's rights in the mark were effectively transferred to Sara Lee in 1981. Bd. Op., 22. With respect to Berkshire's claim that Sara Lee abandoned its rights in the mark through failure to control the quality of the licensee's products or by nonuse, we believe, and so find, that the record supports the Board's finding that Sara Lee did not fail to "control the quality of the products so as to work an abandonment of the mark", that the failure of Alba to make royalty payments did not "make the arrangement a naked license", and that Berkshire "has not met its burden of proving that [Sara Lee] intended not to resume use of its ENERGIZER mark" after the two-year hiatus in use during 1984–1986. Bd. Op., 23–25. The latter finding is made in light of the correlative finding that Sara Lee has established that it has intended, and intends now, to resume use of its ENERGIZER mark.

Accordingly, we hold that the Board correctly decided that Berkshire's use of the mark ENERGIZER on gloves is likely to cause confusion with Sara Lee's wholly viable and previously used mark ENERGIZER, and that Berkshire's use of the mark ENERGIZER is likely to cause confusion with Sara Lee's powerful mark SHEER ENERGY on pantyhose. The refusal of the Board, therefore, to grant Berkshire's application for registration of its ENERGIZER mark, was proper.

■ In determining whether Sara Lee has established in our trial its counterclaims for trademark infringement under federal and state law, we must apply our Circuit's well settled *Polaroid* factors to the evidence on likelihood of confusion. *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961); *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 256 (2d Cir. 1987); *Scarves by Vera, Inc. v. Todo Imports, Ltd. (Inc.)*, 544 F.2d 1167, 1173 (2d Cir.1976). These factors are:

1. the strength of the senior user's mark;

2. the degree of similarity between the two marks;

3. the proximity of the products;

4. the likelihood that the senior user will bridge the gap;

5. actual confusion;

6. the junior user's good faith;

7. the quality of the junior user's product;

8. the sophistication of the buyers.

The strength of a mark is among the most important factors in the analysis, because the stronger the mark the more protection it is afforded. *McGregor–Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1132–33 (2d Cir.1979). The evidence in this case irrefutably establishes that Sara Lee's SHEER ENERGY mark for pantyhose is a strong, indeed a powerful, nationally recognized mark which has been in continuous use since 1972; that it has been the subject of extensive and protracted network television, print media and trade advertising costing Sara Lee approximately $115 million since 1980; that SHEER ENERGY hosiery is the largest selling brand in the United States exceeding $2.2 billion at wholesale since 1980; that SHEER ENERGY is a household name in this country with 80% awareness levels among consumers, equivalent to those for TIDE and TYLENOL; and that expansion of the mark, with substantial new advertising, to gloves and slippers, has further strengthened the mark and broadened its recognition among consumers. We find that the SHEER ENERGY mark is a strong, widely recognized distinctive mark with a powerful presence in the inexpensive apparel industry throughout the nation.

The evidence offered by Berkshire of third party use of energy evoking marks, assertedly to establish dilution of the strength of Sara Lee's mark, and of putative inadequate policing of its mark by Sara Lee, is rejected as marginal and not suffi-ciently comprehensive with respect to market use, presence and inter-play of the respective brand products.

Rival marks are considered relatively similar in this Circuit to the degree that they create the same overall commercial impression when viewed separately. *Paco Rabanne Parfums, S.A. v. Norco Enterprises, Inc.*, 680 F.2d 891, 893 (2d Cir.1982); *American Home Prods. Corp. v. Johnson Chemical Co.*, 589 F.2d 103, 107 (2d Cir. 1978). This comparison is to be made in light of both the marks and the products they represent. *See Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47–48 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). Our record establishes quite conclusively that both parties describe and promote their relevant apparel products in precisely the same way, through marks which focus the consumer's consciousness upon a vital quality of the product, the commercial *sine qua non* being the massaging effect of the elasticized material, engineered to stimulate circulation and create a bracing effect on the skin against which the product is worn. This expectation of renewed energy for the user is the promotional key that confusingly defines and identifies the products of these parties in the marketplace. We note, on the question of similarity of the marks of the parties, that Berkshire's own expert marketing witness, Dr. Thomas Dupont, conceded that "there is no question that the names [marks] are close." Tr. 664 ***. We find, based upon the use of the root word "energy" to define the principal expectation of the purchaser of products claiming the same structural benefit, that the marks have a high degree of similarity, and are, indeed, confusingly similar.

We need not tarry long over the third *Polaroid* factor, the question of the closeness or proximity of the products in the marketplace. This factor should be assessed, in part, in connection with the first two factors. *Centaur Communications, Ltd. v. A/S/M Communications, Inc.*, 830

---

*** References to our trial proceedings shall be indicated by "Tr." followed by the relevant page number in the transcript.

F.2d 1217, 1226 (2d Cir.1987). "Competitive proximity" is concerned with confusion as to the source of the products, *id.*, and involves an analysis of the market for the products at issue. Confusion is more likely when the respective companies compete in the same market. *See Standard & Poor's Corp., Inc., v. Commodity Exchange, Inc.*, 683 F.2d 704, 709 (2d Cir.1982); *Eaton Allen Corp. v. Paco Impressions Corp.*, 405 Supp. 530, 533 (S.D.N.Y.1975).

The products of Berkshire and Sara Lee are inexpensive, fashion accessory items sold in the same type of retail establishments to the same targeted customers. This product proximity increases the likelihood of confusion. *See Centaur Communications*, 830 F.2d at 1226; *Lord Jeff Knitting Co. v. Warnaco, Inc.*, 594 F.Supp. 579, 581 (S.D.N.Y.1984). Moreover, since 1987 and 1988, respectively, Sara Lee has been selling SHEER ENERGY gloves and slippers which directly compete with the ENERGIZER gloves and slippers in mass merchandize stores.

The fourth *Polaroid* factor, bridging the gap, is based upon the rule that a trademark owner that makes a product related to, but not competitive with, another company's product may sue to enjoin an infringement of its trademark on the other company's noncompetitive product if the trademark owner shows that it might some day bridge the competitive gap. *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d at 48–49. This theory allows the senior user of a mark to preserve future avenues of expansion into related fields. *C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.*, 753 F.2d 14, 18 (2d Cir.1985). In this case, there is no gap to bridge. Sara Lee has already extended its SHEER ENERGY mark to gloves and slippers. Furthermore, Sara Lee has also made token use of the mark ENERGIZER on pantyhose and gloves.

The fifth *Polaroid* factor is actual confusion. This type of evidence is, in the usual case, difficult to uncover, and the decisions

of our Circuit have recognized this reality and repeatedly observed that a finding of actual confusion is not necessary for a finding of likely or potential confusion. *See Girls Clubs of America, Inc., v. Boys Clubs of America, Inc.*, 683 F.Supp. 50, 54 (S.D.N.Y.), *aff'd*, 859 F.2d 148 (2d Cir.1988).

The evidence of actual confusion offered at trial by Sara Lee was not overwhelming. Nonetheless, we believe it has sufficient probative value to count in Sara Lee's favor on this point. In an instance of apparent trade confusion, a mass merchandise chain in the mid-Atlantic States, Roses Stores, ran a circular advertisement in December 1988 in which depictions of ENERGIZER and SHEER ENERGY slippers appear side by side above the caption "Ladies ENERGIZER slipper." Tr. 374–378; DXHHH.[†] There is also evidence that in at least one store in Winston–Salem, North Carolina in February, 1989 the rival slippers were displayed on the same rack without distinguishing sale signs or dividers to demark one product from the other. Tr. 378–382; DXMMM 1–3. Additionally, photographs of displays in other stores where the rival products are sold reveal that they are sometimes mixed together or displayed under the other brand's sign. Tr. 534–536, 561–563; DXJJJ1–2, KKK, LLL. Finally, in February, 1988, a buyer for Venture Stores, with headquarters in St. Louis, Missouri sent a diagram of a display gondola for ENERGIZER slippers to Sara Lee's Aris Isotoner division, with a note that "balance of details will follow". DXIII. There is evidence in the record that this communication was stimulated by activities of Berkshire, Tr. 252–53; PX24A, allowing the inference to be drawn that the major retailer in question had confused Sara Lee as to the source of Berkshire's product.

This type of actual trade confusion is highly probative on the question of whether a likelihood of confusion exists, generally, in the marketplace, since wholesalers and retail dealers may be deemed to be more sophisticated about the origins and

---

† References to Trial Exhibits will be indicated by PX or DX, followed by the exhibit letter or number.

sources of product lines than average consumers. *See, Chester Barrie, Ltd. v. The Chester Laurie, Ltd.*, 189 F.Supp. 98, 102 (S.D.N.Y.1960); *Koppers Co. v. Krupp-Koppers GmbH*, 517 F.Supp. 836, 842 (W.D.Pa.1981); *Jockey International, Inc. v. Burkard*, 185 U.S.P.Q. 201, 205 (S.D.Cal. 1975).

Instances of actual customer confusion were also introduced by Sara Lee. A Ms. Louise Stevenson of New Jersey wrote in November, 1988 to "Sheer Energy L'Eggs Products, Inc." (Sara Lee) complaining about the quality of SHEER ENERGY gloves she had purchased, but mistakenly referred to them as ENERGIZER gloves. DXGGG. Another purchaser, Mrs. Brenda Clark of North Andover, Massachusetts returned a defective ENERGIZER slipper in a SHEER ENERGY box to the SHEER ENERGY consumer return facility in early March, 1989. Although Mrs. Clark indicated in her deposition that she had purchased one pair each of the rival slippers and knew that each was the product of a separate manufacturer, her return of the defective slipper (Berkshire) in the wrong box to the wrong source (Sara Lee) is some evidence of confusion at the time she made the shipment. DXYYY.

Finally, a Ms. Irene Henderson of Watertown, Massachusetts, in September 1989 also returned a pair of defective ENERGIZER slippers to the SHEER ENERGY customer return facility and demanded a replacement. Tr. 545; DXDDDD. Misdirected orders and correspondence have been held to evidence actual confusion that is worthy of consideration. *See John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 978 (11th Cir.1983); *Purofied Down Prods. v. Puro Down Int'l. of New Jersey Corp.*, 530 F.Supp. 134, 135 n. 2 (E.D.N.Y.1982).

With respect to the survey evidence produced in the trial by experts for both sides, it is not disputed that actual confusion regarding the rival products is occurring in the marketplace. Harry O'Neill, of the Roper Organization, testified for Sara Lee that his analysis establishes a net level of consumer confusion over the ENERGIZER and SHEER ENERGY products of approximately 28%. Tr. 596–597. Thomas Dupont, of Oxtoby Smith, testified for Berkshire that his analysis of the Roper study establishes a finding of approximately 6–8% confusion. Tr. 630. We conclude that the Roper survey, DXFFF, was sound in its design and methodology in that it tested the relevant group of consumers, in broad markets across the country, accommodated marketplace realities and utilized the classic "mall intercept" technique, which is a principal research device for conducting market research into consumer attitudes and purchasing decisions. *See National Football League Properties, Inc. v. New Jersey Giants, Inc.*, 637 F.Supp. 507, 514–515 (D.N.J.1986). Subjects, after appropriate screening, were shown a magazine advertisement for a SHEER ENERGY product and then asked to review a series of products, including an ENERGIZER slipper, in a store display. This process has been generally relied upon for determination of levels of likely confusion in consumer markets. *See Paco Rabanne Parfums, S.A. v. Norco Enterprises, Inc.*, 680 F.2d at 893; *American Home Products Corp. v. Johnson Chemical Co.*, 589 F.2d at 107.

Dr. Dupont, Berkshire's expert, criticized the Roper analysis, asserting that it was fatally flawed because it encouraged guessing through an implied expectation that the product (SHEER ENERGY) pictured in the ad was in fact part of the array from which the selection was to be made. The difficulty with this theory is that the Roper survey protocol required that the subjects be told with emphasis that they "may or may not find" the ad product in the array, and that "if you don't find any that's perfectly all right". DXCCC. At any rate, the survey results were corrected and modified for random guessing. Tr. 595–97.

The counter survey of Dr. Dupont, which assertedly replicates the Roper survey without its putative flaws, in point of fact does no such thing. It tested consumer reaction to side by side display of the rival products, which is not in accordance with the more common single exposure reality in

the marketplace. Furthermore, the data (questionnaires) upon which Dr. Dupont based his analysis were not made available in Court, undermining Sara Lee's ability to attack the validity of the survey. Accordingly, the Court rejects the Berkshire analysis, and credits the testimony and analysis of Mr. O'Neill and the Roper survey that a 28% level of confusion exists in the marketplace with respect to the SHEER ENERGY and ENERGIZER products in question. This confusion rate exceeds survey results in many other cases finding likelihood of confusion based upon consumer surveys. *See e.g. RJR Foods, Inc. v. White Rock Corp.,* 603 F.2d 1058, 1061 (2d Cir.1979) (15–20%); *Grotrian, et al v. Steinway & Sons,* 365 F.Supp. 707, 716 (S.D.N.Y.1973) (7.7–8.5%), *modified on other grounds,* 523 F.2d 1331 (2d Cir.1975).

With respect to the sixth *Polaroid* factor, whether Berkshire adopted the mark in bad faith, we note that the TTAB declined to make such a finding, and we do as well. We are not unmindful of the strenuous arguments made by Sara Lee in this regard, but we conclude that proof under this element of the *Polaroid* analysis must be directed narrowly to bad faith in the decision to adopt the mark here under review. Whether Berkshire did or did not manufacture handkerchiefs in 1951, or whether it impeded discovery in an unrelated case in 1985, or whether it was found to have falsely labeled the contents of gloves in a New Jersey action in 1984, or especially, whether or not it fairly portrays itself "as a small, honest family business that represents the American dream" (Plaintiff's Post Trial Memorandum, 45), are simply not relevant on this point. Berkshire adopted the ENERGIZER mark upon the advice of its trademark counsel Ezra Sutton, who advised that Alba's disclosed identical mark was being used on products in different channels of commerce. We heard and carefully reviewed Mr. Sutton's testimony in Court, and decline to label him an incredible witness as we are asked to do by Sara Lee. Furthermore, we cannot say conclusively that Isaac R. Dweck testified falsely about Berkshire's first interstate shipment of gloves in 1982. We are, of course, mindful of the Board's finding that the mark ENERGIZER was not shown by Sara Lee in the proceeding below to have been adopted in bad faith by Berkshire. Bd. Op. 8–14.

The *Polaroid* factor that addresses the relative quality of the rival products is of little help in this case, since we conclude that the products in issue are of approximately the same quality. And of course, a senior user is entitled "to protect its reputation even where the infringer's goods are of top quality." *Mobil Oil Corp. v. Pegasus Petroleum Corp.,* 818 F.2d at 259–60.

A further *Polaroid* factor related to the similarity of the marks and competitive proximity of the products is the degree of care likely to be used by potential customers in selecting the product. *See e.g. Markel v. Scovill Mfg. Co.,* 471 F.Supp. 1244, 1251 (W.D.N.Y.), *aff'd,* 610 F.2d 807 (2d Cir.1979). Given the low retail price of these products, we conclude that the average customer will not spend much time examining them prior to purchase. Indeed, the evidence on actual confusion, referred to previously, indicates that hasty or casual purchases of Berkshire products, later found to be defective or substandard, were laid for blame at the door of Sara Lee, which is precisely the type of competitive injury which the statute is designed to redress, and the *Polaroid* factors identify.

Finally, we conclude that no balancing of the equities, *see Chandon Champagne Corp. v. San Marino Wine Corp.,* 335 F.2d 531, 536 (2d Cir.1964), can assist Berkshire in the likelihood of confusion analysis, particularly in light of the immense resources in advertising and promotion efforts expended by Sara Lee over many years. *See Cullman Ventures, Inc., v. Columbian Art Works, Inc.,* 717 F.Supp. 96, 132 (S.D. N.Y.1989).

Accordingly, based upon the manifest strength of Sara Lee's SHEER ENERGY mark, the high degree of similarity between it and Berkshire's ENERGIZER mark, the marked proximity of the products bearing these marks, the actual bridging of the gap in expanded use by Sara Lee, actual confusion established over the

source of the products bearing the marks, and the lack of sophisticated or extended consideration of the rival products by likely purchasers because of low cost, we hold that Sara Lee has established, convincingly, the likelihood of confusion in the marketplace between its mark SHEER ENERGY and Berkshire's mark ENERGIZER. We further find, because of the identity of Sara Lee's first use mark ENERGIZER, as found by TTAB and confirmed here, and Berkshire's mark ENERGIZER, that likelihood of confusion is plain and undeniable.

We can muster little sympathy for Berkshire's equitable argument that its eight year investment in the ENERGIZER mark warrants judgment in its favor, since it embarked upon the use of the mark forewarned that competing interests objected to its use of the mark, and expanded its use to slippers in 1987, in spite of the pendency of the opposition proceeding at the TTAB.

Proof of likely consumer confusion establishes irreparable harm. *Charles of The Ritz Group, Ltd. v. Quality King Distribs., Inc.*, 832 F.2d 1317, 1321 (2d Cir. 1987); *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2d Cir.1986). Accordingly, Sara Lee is entitled to injunctive relief against Berkshire to prevent further infringement of its SHEER ENERGY and ENERGIZER marks, in consequence of Berkshire's use of the mark ENERGIZER on gloves and slippers.

We reject, however, Sara Lee's demand for injunctive relief against purported false advertising claims by Berkshire. The evidentiary record simply does not support it.

In so concluding, we find, based upon all the exhibits and careful scrutiny of all the witnesses who testified at the trial, that this record fails to establish that Sara Lee abandoned its property interest in the ENERGIZER mark it acquired from Alba. On this point, see the testimony of Michael Mayer, Tr. 486–490, and the deposition evidence of Garrett Williamson, DXUUU. Indeed, in point of fact Sara Lee terminated the Alba license to avoid abandonment of the mark. We find that Sara Lee has established that it did not abandon its ENERGIZER mark.

On the need for strict proof of abandonment, *see Saratoga Vichy Spring Co., Inc., v. Lehman*, 625 F.2d 1037, 1044 (2d Cir.1980), it is not surprising, of course, given the protracted duration of this litigation, that Sara Lee has not sought to exploit its ownership of the ENERGIZER mark, either through direct use or third party license. Tr. 354–355, 437–441. "[T]here are circumstances under which nonuse or limited use of the mark would be justified by legal challenges.", *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1274 (2d Cir. 1974). These are, we find, such circumstances.

In a recent interpretation of the phrase "intent not resume use" in Section 1127 (Section 45 of the Lanham Act), the Second Circuit has held it to mean an intent not to resume use "in the reasonably foreseeable future." *Silverman v. C.B.S., Inc.*, 870 F.2d 40, 46 (2d Cir.) *cert. denied,* —— U.S. ——, 109 S.Ct. 3219, 106 L.Ed.2d 569 (1989). The Court found that this standard would be sufficient to protect against forfeiture of marks by those, like Sara Lee, who are temporarily unable to continue using them while also protecting against the long-term warehousing of marks. The noncommercial use of Sara Lee's ENERGIZER mark here has been relatively brief in business terms, under three years, during a litigation that has been pending for almost six years, in which *both* parties are claiming to be the senior user. The cases cited by Berkshire involve periods of non-use far greater than that involved here. *See, e.g., Silverman v. C.B.S.*, 870 F.2d at 45 (21 years of non-use); *La Societe v. Jean Patou*, 495 F.2d at 1269 (20 years of non-use); *Procter & Gamble Co. v. Johnson & Johnson, Inc.*, 485 F.Supp. 1185, 1206 (S.D.N.Y. 1979), *aff'd without op.*, 636 F.2d 1203 (2d Cir.1980) (9–12 years of non-use). Berkshire points to the testimony of Sara Lee officials Charles Lackey and Gerald Evans, Tr. 355, 441, in asserting that Sara Lee has no intention of resuming commercial use of the mark in the "reasonably foreseeable future." Mr. Lackey stated, however, that

his firm's recent acquisition of the Adams–Mills Corporation, a men's hosiery manufacturer, is "an ideal vehicle to be using the ENERGIZER mark." Tr. 441. Mr. Evans was not asked about Sara Lee's prospective use of the mark on slippers, or for third party license.

We hold, on this record, that Sara Lee has intended and continues to intend to resume use of its ENERGIZER mark in the reasonably foreseeable future.

Finally, we find utterly no validity in Berkshire's claim that it secured Sara Lee's consent to the use of the ENERGIZER mark on gloves when it settled a previous suit in this Court against Berkshire for trademark infringement. The resolution of this suit by settlement, in which suit Berkshire was sanctioned for impeding discovery by Judge Weinfeld, in no way addressed rights in the ENERGIZER mark.

Accordingly, all claims in Berkshire's complaint are dismissed, and the Clerk of the Court is directed to enter judgment in favor of Sara Lee on each of its counterclaims, excepting its claim on false advertising, which is dismissed. It is further hereby

ORDERED, that plaintiff Berkshire Fashions, Inc. is permanently enjoined from using the word ENERGIZER or ENERGIZERS in any form whatever, as or as part of any logo, package design or promotional identifier for or on any slipper or glove products, and it is

FURTHER ORDERED that plaintiff Berkshire Fashions, Inc., destroy all infringing articles in its custody or control. On its application for attorney's fees, Sara Lee shall submit a detailed accounting and case authority justifying such an award, within 10 days of this order. Berkshire will have 10 days thereafter to respond.

SO ORDERED.