53 F.3d 1260
 34 U.S.P.Q.2d 1526
 IMAGINEERING, INC., Plaintiff-Appellee,
v.
VAN KLASSENS, INC. and Robert Lukingbeal, Defendants-Appellants,
and
Pitts & Brittian, P.C.,
and
Robinson, Brog, Leinwand, Reich, Genovese & Gluck, P.C.,
Sanctioned Parties-Appellants.
 Nos. 94-1286, 94-1339, 94-1340 and 94-1343.
 United States Court of Appeals,
Federal Circuit.
 April 24, 1995.
 
 Jerre B. Swann, Kilpatrick & Cody, Atlanta, GA, argued for plaintiff-appellee. Of counsel were Theodore H. Davis, Jr. and Nicholas Mesiti. Also on the brief was Susan Farley Gullotti, Heslin & Rothenberg, Albany, NY.
 Robert E. Pitts, Pitts & Brittian, P.C., Knoxville, TN, argued for defendants-appellants. With him on the brief were R. Bradford Brittian and Raymond E. Stephens.
 David C. Burger, Robinson, Brog, Leinwand, Reich, Genovese & Gluck, P.C., New York City, was on the brief for the sanctioned parties-appellants.
 Before NEWMAN, Circuit Judge, BENNETT, Senior Circuit Judge, and RADER, Circuit Judge.
 RADER, Circuit Judge.
 
 
 1
 Imagineering, Inc. sued Van Klassens, Inc. and its founder, Robert Lukingbeal for trade dress infringement, false advertising, unfair competition, and trade dress dilution. The jury found that Van Klassens infringed Imagineering's inherently distinctive trade dress. The jury also found that Van Klassens advertised falsely and competed unfairly. The jury awarded Imagineering compensatory damages of $860,000 and punitive damages of $4 million. Imagineering, Inc. v. Van Klassens, Inc., 851 F.Supp. 532, 535-36 (S.D.N.Y.1994) (Final Order and Permanent Injunction). The trial court sanctioned Van Klassens and its counsel for three procedural improprieties. Imagineering, Inc. v. Van Klassens, Inc., No. 92-CV-751, slip op. at 6, 14, 25 (S.D.N.Y. Sept. 8, 1993). The trial court also denied Van Klassens' request for attorney fees incurred in defending itself against a design patent infringement suit that Imagineering brought and voluntarily withdrew. Imagineering, Inc. v. Van Klassens, Inc., No. 92-CV-751, slip op. at 2 (S.D.N.Y. Oct. 7, 1993) (Endorsement).
 
 
 2
 Because the jury's findings are correct based on the evidence, this court affirms the verdict of trade dress infringement. Because the amount of the punitive damages award was arbitrary and excessive, this court vacates the award and remands for entry of a remittitur. Because the trial court abused its discretion, this court reverses the sanctions against Van Klassens and its counsel. Finally, because the trial court did not abuse its discretion, this court affirms the denial of Van Klassens' motion for attorney fees.
 
 BACKGROUND
 
 3
 Imagineering has manufactured and sold WEATHEREND estate furniture since 1983. The furniture's name denotes its inspiration: chairs and tables created by architect Hans Heistad in 1913 for a Maine estate called "Weatherend." The twelve pieces of furniture in the WEATHEREND line all share a nautical look, with wide slats, scooped seat boards and arms, rounded edges, notched and curved legs, and angled backrests. Imagineering builds its WEATHEREND furniture from solid Honduras mahogany, using West System glue, Awlgrip paint, and epoxy. Imagineering advertises the WEATHEREND line aggressively. Numerous trade journals have given WEATHEREND favorable reviews.
 
 
 4
 Robert Lukingbeal founded Van Klassens in 1986. In 1987, Van Klassens began to make and sell "English garden furniture" very similar to Imagineering's WEATHEREND line. In November 1987, Imagineering accused Van Klassens of violating section 43(a) of the Lanham Act, 15 U.S.C. Sec. 1125 (1988), and threatened legal action. Van Klassens responded by asserting its right to make and sell its furniture. Imagineering did not take immediate legal action.
 
 
 5
 In 1991, Imagineering obtained U.S. Design Patent No. 313,320 (the '320 patent) for its WEATHEREND rocking chair. In January 1992, Imagineering sued Van Klassens. Imagineering alleged design patent infringement, trade dress infringement, and false advertising under section 43(a) of the Lanham Act, and unfair competition and trade dress dilution under New York law. Van Klassens denied infringement and asserted invalidity of the '320 patent.
 
 
 6
 In October 1992, Van Klassens counterclaimed for a declaratory judgment of invalidity and noninfringement of the '320 patent. Admitting the invalidity of the '320 patent, Imagineering withdrew its patent infringement claim in February 1993. Van Klassens did not withdraw its declaratory judgment counterclaim. In September 1993, the trial court dismissed the declaratory judgment counterclaim, over Van Klassens' objection. The trial court sanctioned Van Klassens for (1) refusing to withdraw the counterclaim voluntarily; (2) moving to compel the deposition of the attorney who prosecuted the '320 patent to issuance; and (3) filing a motion to dismiss or transfer on grounds of personal jurisdiction and venue. After Imagineering admitted invalidity of the '320 patent, Van Klassens requested attorney fees under 35 U.S.C. Sec. 285 (1988) to redress Imagineering's attempts to enforce an invalid patent. The trial court denied this request before trial. Imagineering, Inc. v. Van Klassens, Inc., No. 92-CV-751, slip op. at 2 (S.D.N.Y. Oct. 7, 1993) (Endorsement).
 
 
 7
 After a three-week trial, the jury awarded Imagineering $860,000 in compensatory damages for willful trade dress infringement, false advertising, and unfair competition. The jury also awarded Imagineering $4 million in punitive damages. The trial court awarded Imagineering $250,000 in "enhanced" Lanham Act damages under 15 U.S.C. Sec. 1117(a) (1988), $44,251.11 in sanctions, $659,789.50 in attorney fees, and $54,603.97 in taxable costs. The trial court also permanently enjoined Van Klassens from advertising or selling furniture "sufficiently similar" to be confused with WEATHEREND furniture; from advertising comparisons between Van Klassens' and Imagineering's furniture; and from "unfairly competing" with Imagineering in any manner. Imagineering, Inc. v. Van Klassens, Inc., 851 F.Supp. 532, 540-42 (S.D.N.Y.1994) (Final Order and Permanent Injunction). Van Klassens appeals.
 
 DISCUSSION
 I.
 
 8
 The governing statute, 28 U.S.C. Sec. 1295(a)(1) (1988), gives this court appellate jurisdiction over cases that arise under the Patent Act, 35 U.S.C. Secs. 1-307 (1988). This court also has appellate jurisdiction over claims under the Lanham Act, 15 U.S.C. Secs. 1051-1127 (1988), that are pendent to claims under the Patent Act. 28 U.S.C. Sec. 1295(a)(1) (1988); see CPG Prods. Corp. v. Pegasus Luggage, Inc., 776 F.2d 1007, 1011, 227 USPQ 497, 499 (Fed.Cir.1985) (exercising appellate jurisdiction over Lanham Act claims pendent to Patent Act claims). Therefore, this court has jurisdiction over this appeal only if the case below included a claim arising under the Patent Act.
 
 
 9
 Imagineering's complaint as filed included a claim for design patent infringement. Before trial, however, Imagineering dropped this claim, and the trial court dismissed Van Klassens' declaratory judgment patent counterclaim. Nonetheless, a claim arising under patent law remained in the case. Under 35 U.S.C. Sec. 285, Van Klassens claimed attorney fees incurred in its defense against the patent. Section 285 authorizes fee awards "in exceptional cases." Since section 285 appears in title 35 and was enacted as a part of United States patent law, the question whether a case is exceptional within the meaning of section 285 arises under the Patent Act. Accordingly, this court may consider Van Klassens' appeal.
 
 II.
 
 10
 To prevail in an action for trade dress infringement under the Lanham Act, a plaintiff must prove (1) that its mark is inherently distinctive or has acquired distinctiveness through a secondary meaning, and (2) that a likelihood of confusion exists between its product and the defendant's. Two Pesos, Inc. v. Taco Cabana, Inc., --- U.S. ----, ----, 112 S.Ct. 2753, 2758, 120 L.Ed.2d 615 (1992).
 
 
 11
 This court reviews the jury's factual finding that trade dress is inherently distinctive, or has acquired a secondary meaning, for substantial evidence. See Braun, Inc. v. Dynamics Corp. of Am., 975 F.2d 815, 825, 24 USPQ2d 1121, 1129-30 (Fed.Cir.1992). Because trade dress issues are not unique to the exclusive jurisdiction of the United States Court of Appeals for the Federal Circuit, this court defers to the law of the regional circuit in which the district court sits. See KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc., 997 F.2d 1444, 1447, 27 USPQ2d 1297, 1300 (Fed.Cir.1993).
 
 
 12
 The jury found that Imagineering's WEATHEREND furniture has an inherently distinctive trade dress. Trade dress " 'involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques.' " Two Pesos, --- U.S. at ---- n. 1, 112 S.Ct. at 2755 n. 1 (quoting John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 980 (11th Cir.1983)). Inherently distinctive trade dress qualifies for protection from infringement. Two Pesos, --- U.S. at ---- - ----, 112 S.Ct. at 2756-57. Trade dress is inherently distinctive when, by its "intrinsic nature," it identifies the particular source of a product. Id.
 
 
 13
 Several witnesses, including Imagineering's chairman and its furniture design witness, testified that the WEATHEREND furniture possesses a coherent "total image," comprising wide slats, scooped seat boards and arms, rounded edges, notched and curved legs, and angled backrests, among other distinctive attributes. The record also showed that upon entry of the WEATHEREND furniture into the market, it received wide media coverage. Design magazines and trade journals published many editorials commenting on the WEATHEREND line. These magazines often used photographs of WEATHEREND furniture in pictorials as well. These accounts hailed the WEATHEREND furniture as "novel," "exclusive," and "outdoor classics." An interior design competition also recognized the WEATHEREND line which was also featured in the Cooper-Hewitt Museum.
 
 
 14
 Witnesses at trial also testified that Imagineering's WEATHEREND line was unlike any other furniture yet produced. Van Klassens' largest dealer testified at trial that he had "not seen anything like" Imagineering's furniture. Imagineering's design witness testified that WEATHEREND had a "totally different look" that was new to the market.
 
 
 15
 In sum, the record contained considerable evidence about the inherent distinctiveness of the WEATHEREND line. The record showed that the WEATHEREND furniture's singular appearance identified Imagineering as the furniture's source. Thus the record evidence supports the jury's finding of inherent distinctiveness.
 
 III.
 
 16
 The jury found that Van Klassens infringed Imagineering's trade dress because Van Klassens created a likelihood of confusion between the products. Applying the law of the United States Court of Appeals for the Second Circuit, this court reviews the jury's ultimate finding of likelihood of confusion de novo. Gruner + Jahr USA Publishing v. Meredith Corp., 991 F.2d 1072, 1077, 26 USPQ2d 1583, 1586 (2d Cir.1993).
 
 
 17
 The Second Circuit has identified a test of eight non-exclusive factors bearing on likelihood of confusion:
 
 
 18
 the strength of [the] mark, the degree of similarity between the two marks, the proximity of the products, the likelihood that the prior owner will bridge the gap, actual confusion, and the reciprocal of defendant's good faith in adopting its own mark, the quality of defendant's product, and the sophistication of the buyers.
 
 
 19
 Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495, 128 USPQ 411, 413 (2d Cir.), cert. denied, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961). Though Polaroid was a trademark case, the test for likelihood of confusion applies equally to trade dress cases. Paddington Corp. v. Attiki Importers & Distribs, Inc., 996 F.2d 577, 584, 27 USPQ2d 1189, 1193 (2d Cir.1993). The jury's resolution of each Polaroid factor is a factual finding, which this court reviews for clear error. Gruner + Jahr, 991 F.2d at 1077. "[E]ach factor must be evaluated in the context of how it bears on the ultimate question of likelihood of confusion as to the source of the product." Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 799 F.2d 867, 872, 230 USPQ 831, 834 (2d Cir.1986).
 
 
 20
 On the first factor, the record showed the strength of Imagineering's trade dress. For instance, the trade press often referred to WEATHEREND as distinctive. Moreover Imagineering has bolstered its mark's strength through widespread advertising. The furniture industry recognizes the WEATHEREND image.
 
 
 21
 On the second factor, the record disclosed the striking similarity between Van Klassens' and Imagineering's products. Beyond the photographs and descriptions in the record, a furniture expert testified at trial that he could not distinguish Van Klassens' furniture from Imagineering's even from only three feet away. The dimensions of Van Klassens' furniture are generally within half an inch of Imagineering's.
 
 
 22
 On the third factor, Imagineering's and Van Klassens' furniture move in the same channels of trade. For instance, both advertise in the same publications.
 
 
 23
 On the fourth factor, little or no gap remains to be bridged between the products. Van Klassens' furniture is practically identical in appearance to Imagineering's WEATHEREND line. As noted earlier, even a trained expert could not detect differences.
 
 
 24
 On the fifth factor, the record shows actual confusion. Imagineering's employees, independent agents, and customers testified about confusing Van Klassens' furniture for Imagineering's. Even Mr. Lukingbeal, Van Klassens' founder, testified that in 1987 he received calls from former WEATHEREND dealers and representatives who thought Van Klassens was also a WEATHEREND dealer. Because dealers and experts are more sophisticated about the origins and sources of products lines than average consumers, their confusion is "highly probative on the question of whether a likelihood of confusion exists." Berkshire Fashions, Inc. v. Sara Lee Corp., 725 F.Supp. 790, 796-97, 14 USPQ2d 1124, 1129 (S.D.N.Y.1989), aff'd, 904 F.2d 33 (2d Cir.1990) (table).
 
 
 25
 On the sixth factor, the record evidence shows that Van Klassens lacked good faith in adopting Imagineering's trade dress. Mr. Lukingbeal admitted he read many publications that had profiled Imagineering. In addition, other principals within the Van Klassens organization knew of Imagineering's furniture designs. Indeed a witness for Van Klassens admitted that the company had a copy of Imagineering's 1989 catalog when it developed three pieces of furniture. When Van Klassens developed a fourth piece of its furniture, it possessed Imagineering's blueprints for the very same piece in the WEATHEREND line. This evidence showed that Van Klassens developed its practically identical furniture with full knowledge of Imagineering's designs.
 
 
 26
 Trying to show good faith, Mr. Lukingbeal testified that his inspiration for Van Klassens' furniture was a trip he took to Cawdor Castle in Scotland in 1964. A review of the Castle's records showed during trial, however, that the Castle was closed to the public in 1964. The uncanny resemblance between Van Klassens' furniture and Imagineering's WEATHEREND line, coupled with Van Klassens' admitted knowledge of Imagineering's trade dress, supports an inference of bad faith by Van Klassens. See Paddington, 996 F.2d at 587.
 
 
 27
 On the seventh factor, the record disclosed that Van Klassens' product quality was drastically lower than Imagineering's. Witnesses testified that Van Klassens used "garbage wood" that literally "came apart" during testing. Other witnesses noted that Van Klassens' joinery that was "absolutely terrible." By contrast, a furniture expert testified that Imagineering possessed a high level of quality control, used "excellent parts," and produced a "quality product." Imagineering quite reasonably may have feared, based on the record evidence, that consumers would attribute any perceived inferior quality of Van Klassens' products to Imagineering's, thus damaging Imagineering's reputation and image. See Payless Shoesource, Inc. v. Reebok Int'l Ltd., 998 F.2d 985, 989, 27 USPQ2d 1516, 1519 (Fed.Cir.1993).
 
 
 28
 On the eighth and final factor, the record shows that the buyers of Imagineering's and Van Klassens' furniture are sophisticated. While a sophisticated purchaser might more easily discern distinctions between Van Klassens' and Imagineering's furniture, the record in this case shows that even a trained furniture salesman could not distinguish the two products.
 
 
 29
 Taken together, the eight factors strongly support the jury's finding of trade dress infringement. After review of the record evidence associated with these factors, this court affirms the jury's finding.
 
 IV.
 
 30
 Imagineering received $4 million in punitive damages for its state law unfair competition claim, over four times the $860,000 compensatory damage award. New York common law permits punitive damage awards for the tort of unfair competition. Under New York law, such awards require a showing of conduct amounting to "gross, wanton, or willful fraud or other morally culpable conduct." Borkowski v. Borkowski, 39 N.Y.2d 982, 387 N.Y.S.2d 233, 233, 355 N.E.2d 287, 287 (1976); accord Getty Petroleum Corp. v. Island Transp. Corp., 878 F.2d 650, 657, 11 USPQ2d 1334, 1340 (2d Cir.1989). The jury properly awarded punitive damages for Van Klassens' willful conduct. The amount of the award, however, was excessive. This court thus requires a remittitur.
 
 
 31
 Federal appellate courts may review jury awards of punitive damages based on state law claims. See Getty Petroleum Corp. v. Island Transp. Corp., 862 F.2d 10, 14, 8 USPQ2d 1687, 1690-91 (2d Cir.1988) (finding punitive damage award "grossly disproportionate" and ordering remittitur on remand in unfair competition case), cert. denied 490 U.S. 1006, 109 S.Ct. 1642, 104 L.Ed.2d 157 (1989). The reviewing court must " 'keep a verdict for punitive damages within reasonable bounds considering the purpose to be achieved as well as the mala fides of the defendant in the particular case.' " Lanfranconi v. Tidewater Oil Co., 376 F.2d 91, 97 (2d Cir.) (quoting Faulk v. Aware, Inc., 19 A.D.2d 464, 244 N.Y.S.2d 259, 266 (1963), aff'd, 14 N.Y.2d 899, 252 N.Y.S.2d 95, 200 N.E.2d 778 (1964), cert. denied, 380 U.S. 916, 13 L.Ed.2d 801 (1965)), cert. denied, 389 U.S. 951, 88 S.Ct. 334, 19 L.Ed.2d 361 (1967). A punitive damage award "must bear a reasonable relationship to plaintiff's injury and defendant's malicious intent." Getty, 862 F.2d at 14. Accordingly, this court must inquire to ensure that the punitive damages do not exceed "that amount reasonably necessary to secure the purposes of such awards, and thus to become in part a windfall to the individual litigant." Aldrich v. Thomson McKinnon Sec., Inc., 756 F.2d 243, 249 (2d Cir.1985).
 
 
 32
 The record evidence shows that Van Klassens' total sales were at most only $1.49 million. Imagineering, Inc. v. Van Klassens, Inc., 851 F.Supp. 532 (S.D.N.Y.1994). These total sales provide a baseline for assessing Van Klassens' conduct. In light of these sales, the jury awarded Imagineering $860,000 in compensatory damages, to which the trial court added an additional $1,008,815.02 in "enhanced" damages, attorney fees, sanctions, and costs. The total judgment against Van Klassens was $5,868,815.02. The $4 million punitive damage award was nearly 500% of compensatory damages. This amount exceeds a reasonable relationship to Imagineering's injury. Furthermore, while the record supported a finding of bad faith against Van Klassens, the evidence hardly justified a finding of conduct so malicious as to warrant increasing damages more than 400%. Under these circumstances, the punitive damages award confers upon Imagineering a "windfall" recovery. See Aldrich, 756 F.2d at 249. This court therefore vacates the jury's punitive damage award and remands for application of a remittitur in an amount set by the United States District Court for the Southern District of New York. Cf. Getty, 862 F.2d at 14.
 
 V.
 
 33
 The trial court sanctioned Van Klassens for three alleged procedural improprieties. This court reviews the sanctions for abuse of discretion. Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc., 28 F.3d 259, 264 (2d Cir.1994).
 
 
 34
 First, the trial court sanctioned Van Klassens and its counsel for failing to withdraw Van Klassens' declaratory judgment counterclaim for design patent invalidity. Imagineering, Inc. v. Van Klassens, Inc., No. 92-CV-751, slip op. at 6 (S.D.N.Y. Sept. 8, 1994). Based on the record evidence, the trial court abused its discretion. Imagineering consented to Van Klassens' amendment of its Answer to include the declaratory judgment counterclaim, as the trial court acknowledged. When Imagineering admitted that the '320 patent was invalid, Imagineering dismissed its patent claims and asked Van Klassens to withdraw its counterclaim. Had Van Klassens done so without a stipulation as to invalidity, which Imagineering refused to provide, Van Klassens would have waived any objections to errors the trial court might have made concerning issues in the counterclaim. Cf. United States v. Procter & Gamble Co., 356 U.S. 677, 680, 78 S.Ct. 983, 985, 2 L.Ed.2d 1077 (1958). Specifically, Van Klassens would have waived objections to the trial court's denial of its motion for attorney fees under 35 U.S.C. Sec. 285. The trial court abused its discretion by sanctioning Van Klassens for its refusal to take an action that would hamper its own defense.
 
 
 35
 Second, the trial court sanctioned Van Klassens for moving to compel the deposition of Susan Gullotti, the attorney who prosecuted the '320 patent. Imagineering, Inc. v. Van Klassens, Inc., No. 92-CV-751, slip op. at 14 (S.D.N.Y. Sept. 8, 1993). When Van Klassens requested Ms. Gullotti's deposition, she argued ex parte to the court on February 8, 1993, that she should not be deposed. Van Klassens received a copy of this communication in May 1993. At that time Van Klassens sought an opportunity to be heard, and the trial court granted Van Klassens permission to brief the question about the need to depose Ms. Gullotti.
 
 
 36
 Nonetheless, on September 8, 1993, the trial court sanctioned Van Klassens for moving to compel Ms. Gullotti's deposition. As noted, the court had previously granted Van Klassens permission to brief this issue. Making a motion can hardly be construed as inconsistent with briefing concerning the issue. The trial court abused its discretion by sanctioning Van Klassens for accepting the court's invitation to make this argument.
 
 
 37
 Finally, the trial court sanctioned Van Klassens' counsel under Fed.R.Civ.P. 11 for filing a motion to dismiss for lack of jurisdiction and improper venue. Imagineering, Inc. v. Van Klassens, Inc., No. 92-CV-751, slip op. at 25 (S.D.N.Y. Sept. 8, 1993). Van Klassens based its motion to dismiss on the New York long-arm statute--N.Y.Civ.Prac.L. & R. 302(a)(1) and (2) (McKinney 1990).* The trial court mistakenly believed that Van Klassens' motion relied solely on section 302(a)(2) and sanctioned Van Klassens for citing cases construing section 302(a)(1) in the motion. Van Klassens in fact partly based its motion on section 302(a)(1). The trial court misconstrued Van Klassens' motion and sanctioned Van Klassens and its counsel. This abuse of discretion also warrants reconsideration.
 
 VI.
 
 38
 This court reviews the trial court's denial of Van Klassens' motion for attorney fees under 35 U.S.C. Sec. 285 for an abuse of discretion. Cambridge Prods., Ltd. v. Penn Nutrients, Inc., 962 F.2d 1048, 1050, 22 USPQ2d 1577, 1579 (Fed.Cir.1992). Discretion "is abused if the record contains no basis on which the district court rationally could have made its decision or if the judicial action is arbitrary, fanciful or clearly unreasonable." PPG Indus., Inc. v. Celanese Polymer Specialties Co., 840 F.2d 1565, 1572, 6 USPQ2d 1010, 1016 (Fed.Cir.1988).
 
 
 39
 To prevail, Van Klassens had to show by clear and convincing evidence that Imagineering's conduct was exceptional. Reactive Metals and Alloys Corp. v. ESM, Inc., 769 F.2d 1578, 1582, 226 USPQ 821, 824 (Fed.Cir.1985). Specifically, Van Klassens had to prove that Imagineering brought the patent infringement action in bad faith. See id. "[B]ased upon the affidavits submitted by [Imagineering]," the trial court discerned no sense in which Imagineering acted "either unreasonably or in bad faith" by bringing its patent infringement claim. Imagineering, Inc. v. Van Klassens, Inc., No. 92-CV-751, slip op. at 2 (S.D.N.Y. Oct. 7, 1993) (Endorsement). Based on the standard announced in PPG Industries, the trial court did not abuse its discretion by denying Van Klassens fees.
 
 CONCLUSION
 
 40
 This court affirms the jury verdict of trade dress infringement; vacates the punitive damage award and remands for entry of a remittitur; reverses the trial court's imposition of sanctions on Van Klassens and its counsel; affirms the trial court's denial of Van Klassens' motion for attorney fees under 35 U.S.C. Sec. 285; and affirms in all other respects (after considering Van Klassens' remaining issues on appeal).
 
 COSTS
 
 41
 Each party shall bear its own costs.
 
 
 42
 AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART, and REMANDED WITH INSTRUCTIONS.
 
 
 
 *
 Section 302(a)(1) permits New York courts to exercise personal jurisdiction over non-residents who transact business within New York State or contract to supply goods in the state. Section 302(a)(2) permits New York courts to exercise personal jurisdiction over non-residents who commit a tortious act within New York State