**ALLEN ENGINEERING CORPORATION,**
Plaintiff,

v.

**BARTELL INDUSTRIES, INC. and Darragh Company, Defendants.**

**No. J–C–95–143.**

United States District Court,
E.D. Arkansas,
Jonesboro Division.

April 13, 1999.

Stephen D. Carver, Carver Patent Law, Ltd., Little Rock, AR, Dennis B. Haase, Gill Law Firm, Little Rock, AR, Stephen L. Curry, Kemp, Duckett, Spradley, Curry, & Arnold, Little Rock, AR, for Allen Engineering Corporation, plaintiff.

James M. McHaney, Jr., Hilburn, Calhoon, Harper, Pruniski & Calhoun, Ltd., North Little Rock, AR, William M. Lee, Jr., James T. Harris, Lee, Mann, Smith, McWilliams, Sweeney & Ohlson, Chicago, IL, for Bartell Industries Inc., Darragh Company, defendant.

Stephen D. Carver, Carver Patent Law, Ltd., Pleasant Valley Corporate Center, Little Rock, AR, Stephen L. Curry, Kemp, Duckett, Spradley, Curry & Arnold, Little Rock, AR, for Allen Engineering Corporation, counter-defendant.

## ORDER

STEPHEN M. REASONER, District Judge.

This cause came on for trial in Jonesboro, Arkansas from May 20, 1997 through May 23, 1997. Pursuant to the Court's directive, the parties have submitted post-trial pleadings, and in accordance with the findings of fact and conclusions of law made below, the Court finds that Defendant Bartell Industries, Inc. (hereinafter "Bartell") did infringe Plaintiff's 220 patent. The Court does not find that Bartell infringed Plaintiff's 510 patent. Additionally, the Court finds that Defendants did not violate the provisions of the Lanham Act. Judgment will be entered accordingly.

## I. *Findings of Fact*

### A. *Factual Background*

1. Plaintiff Allen Engineering Corporation (hereinafter "Allen") is an Arkansas Corporation with its principal place of business in Paragould, Arkansas.

2. Separate Defendant Bartell Industries, Inc. (hereinafter "Bartell") is a Canadian corporation having its principal place of business in Brampton, Ontario, Canada.

3. Separate Defendant Darragh Company (hereinafter "Darragh") is an Arkansas Corporation having its principal place of business in Little Rock, Arkansas. Darragh is a distributor for equipment sold by Bartell, including the allegedly infringing riding trowel at issue herein, and is a party to this litigation solely because it sells Bartell riding trowels.

4. Riding trowels are concrete finishing machines. An operator sits on top of the trowel to steer the machine. On such a riding trowel, the operator and the machine can "float" on newly poured concrete and smooth it to an unprecedented degree. The trowel is powered by an internal combustion engine and steered through the operator's manipulation of either single or double control sticks. Under the operator's platform are a pair of rotating concrete finishing blades the pitch of which are also controlled by the trowel's operator. Said trowels are used more and more frequently at sites where large concrete pours are taking place.

5. Allen is in the business of manufacturing and selling various types of industrial concrete fabrication and finishing equipment, including a line of riding trowels designated "Razorbacks." Allen has obtained two U.S. patents for the Razorback Trowel: U.S. Patent No. 5,108,220 (hereinafter "the 220 patent") and U.S. Patent No. Des. 323,510 (hereinafter "the 510 patent"). These are the two patents upon which Plaintiff bases its claims of infringement. These two patents name J. Dewayne Allen, President of Allen Engineering Corporation, and Hugh L. Adams, an independent contractor employed by Allen, as the inventors.

6. Allen is not the first patent holder with regard to riding or ride-on trowels. The inception of the riding trowel industry is based upon a patent issued to Orville H.

Holz, Sr. and Norbert J. Holz, U.S. Patent Nos. 3,936,212 and 4,046,484 (hereinafter "the Holz patents"). These patents were ultimately licensed to Bartell, Allen, Besto Holland, and Whiteman Industries.

7. Beginning in 1987, Allen began developing its first model of a ride-on trowel. This developmental trowel was known as the "Red Rider." The development of this new trowel contained an element of acquiring market interest which, in the concrete finishing business, necessarily accompanies technical development.

8. Allen sold the Red Rider from 1988 through early 1990. Over 100 Red Rider trowels were ultimately sold in the United States, but the exact number is not known. Allen had an understanding with market users, its testing sources, that if they encountered problems with the Red Rider, or ultimately felt that it was not a workable unit, Allen would repair, replace, or substitute a usable product so as not to delay that particular concrete finisher's productivity. On several occasions after the inventions reflected in the 220 patent were completed and known to work, customers returned Red Rider units to Allen for replacement by trowels incorporating the 220 patent's features.

9. The Red Rider trowel, although sold and distributed, was essentially an experimental prototype built on the Holz teachings which was under constant modifications. Plaintiff constantly made changes to the Red Rider prototypes due to field testing. Considering how the machine functioned under actual operating conditions, the Court finds it would have been impossible to conduct adequate research and development on the Red Rider in a factory environment.

10. The Red Rider trowel was a "front facing" trowel, as opposed to a straddle rider trowel. On front facing trowels, the operator sits upon a forward-facing seat. The seat is mounted on a frame above an engine, gear boxes, and rotating trowel blades. On straddle riders, the operator sits on the machine much like the operator of a motorcycle or snowmobile straddles that type of machine. The blades on front facing trowels are below and to the left and right of the operator, while on straddle riders, the blades are below and in front of and behind the operator.

11. Steering of the Red Rider is effected by operating two control sticks extending upwardly from the frame in front of the operator. An operator steers the trowel by moving the two control sticks in various ways. The control sticks are attached to linkages extending from the two sticks through mechanical means to the two gearboxes mounted beneath the frame. By moving the control sticks the operator tilts the gearboxes which, in turn, tilts the rotating blades.

12. The basic Red Rider had three major differences from the steering system disclosed in the Holz patents. First, the Red Rider employed a pair of control sticks for tilting the gearboxes, as opposed to a single steering stick as disclosed in the Holz patents. Second, the Red Rider employed a direct drive arrangement between the two gearboxes which rotate the trowel blades. Finally, for tilting the gearboxes, the Red Rider employed a pair of parallel lever arms which extended from front to rear beneath the frame of the machine. Like many Holz licensees, Allen learned through its own research efforts that the original Holz design made for a machine that was virtually unworkable and unsteerable.

13. Beginning in the late summer of 1989, Dewayne Allen and Hugh Adams began collaborating on an improved version of the Red Rider. A prototype of this trowel was tested in California in the fall of 1990. This machine was then displayed at the World of Concrete, a major concrete industry trade show, in Las Vegas, Nevada in January 1990. Representatives of Bartell, specifically Brad Fraser, inspected Allen's riding trowel prototype shown at this trade show and photographed the machinery in detail.

14. Allen filed an application for the 510 patent on May 21, 1990. The company filed an application for the 220 patent on July 13, 1990. On January 28, 1992, the 510 patent issued, and on April 28, 1992, the 220 patent issued. After filing these applications, notice was given of the pending nature of Allen's patent applications so as to provide notice to third parties. While a typographical error existed in one form applique used by Allen on the trowels, this error was not material to the prerequisite requirement that notice be given.

15. Bartell introduced its first straddle riding trowel at the 1988 World of Concrete show. These straddle riders were known as Bartell's BTR series. The BTR straddle rider employed a steering mechanism known as "torquing the rings," and this steering system was disclosed in one of the Holz patents. This steering system was not particularly effective, however, and Bartell embarked on improving these BTR machines. At the 1989 World of Concrete show in January, 1989, Bartell exhibited its improved BTR trowel. This second BTR model employed direct tilting of the gearboxes for steering the machine, as opposed to the "torquing the rings" mechanism. Short lever arms, connected to a single operator's stick, were used to tilt the gearboxes. The new BTR trowels were sold during 1989, and they are still on sale to the present day. There are currently two BTR models for sale by Bartell, the BTR 72 and the BTR 88. These machines only differ in size.

16. Bartell introduced its first forward-facing ride-on trowel in January of 1992 at the World of Concrete show. In December of 1992, Allen complained to Bartell of alleged infringement of the 220 patent.

B. *510 Patent*

17. The design of the 510 patent incorporates common features and structural details used generally in prior art depicting riding trowels. For example, the operator's seat is mounted atop an upper frame members which extends to a lower frame. The operator sits over the engine of the machine. Twin sticks used for steering are positioned in front of the operator. Adjustment handles for altering the pitch of the rotor blades are positioned to either side of the operator. Rotor blades are located below the lower frame. These blades support the frame upon which the rest of the machine rests. Guard rings extend around the rotor blades to prevent injury. Lights are mounted on the operator's platform. All of these various elements are shown in various combinations in prior art of other machines, such as the Whiteman patent, the Besto application, and the Holz patent.

18. The first test for design patent infringement is the overall visual similarity test. This test is used to determine whether the accused design is "substantially the same" as the claimed design. The Court finds the design of the Bartell riding trowel and that of the claimed design in the 510 patent are not "substantially the same." The Court finds the following differences to be the most significant. First, the name "Bartell" is boldly printed on a plate directly beneath the seat. Second, the blade pitch control rods with hand cranks located on either side of the operator are tall in the 510 patent but in the Bartell trowel, the rods are shorter and stockier. Third, the motors are of different shapes and located on the machines dissimilarly. On the 510 patent, the motor rests on the operator's platform, while on the Bartell trowel, the motor sits in a depressed well below the operator's platform. Fourth, on the '510 patent behind the rectangular lights are large distinctive boxes. The left box contains the battery and the right box contains the fuel tank. The Bartell machine has round lights, and there are no large boxes behind the lights. Fifth, the foot pedals on the '510 are large and raised off the operating platform, whereas on the Bartell machine, the pedals are nearly flush with the operating platform. Sixth, the operator platforms

differ between the two machines. On the '510 patent, the platform covers only the area designated for the operator's feet, while the Bartell trowel's platform covers the entire upper portion of the machine. Finally, the gas tank, battery box, and engine design on the two machines are distinctly different. In conclusion, comparison of the accused Bartell trowel with the '510 trowel fails the ordinary observer test. There are many differences between the two designs which make the two trowels not substantially similar.

19. Further, the second prong of design patent infringement is the test of appropriation of the points of novelty in the patented device which distinguishes it from prior art. The Court finds that the Bartell trowel does not incorporate any points of novelty that appear in the '510 patent. It is apparent that the '510 patent shares many of the same elements as the prior art, such as a seat with motor underneath, tubular frames that support the machine, rotating blades located beneath the machine, and an operator's platform with steering levers and blade pitch control rods.

20. Since the Bartell trowel has not appropriated any points of novelty of the design of the '510 patent, there is no infringement of same.

C. '220 Patent

21. The heart of the '220 patent invention is its enhanced steering characteristics. While the use of undercarriage lever arms and flexible drive shaft linkages have been used on other riding trowels, the evidence reflects that no design, other than the '220 patent and that of Bartell's infringing trowel, utilized the offset torque rod means wherein the actual movement of the gear boxes resulted from application of force at a point offset from the center pivot axis of the gear boxes themselves. The resulting dynamic cross-linkage results in more responsive and stable steering. While these concepts appear in various claims in the '220 patent, the most

evident claim which directly reads on the Bartell # 1 unit is contained in Claim 15 and its dependent Claims 16, 17, 18, and 19.

22. Bartell # 2, while slightly modified in design of the lever arm linkage, is both a structural and functional equivalent of the '220 patent. The Court finds that the Bartell # 2 trowel, while modified, performs substantially the same function as the '220 patent in substantially the same way.

23. The Court does not find that Allen failed to disclose pertinent prior art to examiners in obtaining the '220 patent or that Allen misled the patent examiners by stating that the prior art cited was the most pertinent. While there is no doubt that such information is now known to exist, there is no showing that the inventors of either the '220 or the '510 patents were knowledgeable of such information at times relevant to the patent application process or that they withheld such information from the patent examiner.

24. Allen has established the need for injunctive relief as Bartell has continued a pattern of patent infringement. Damages are also warranted in this case due to the infringing nature of Bartell's conduct.

## II. *Analysis and Discussion*

### A. *Jurisdiction and Venue*

Jurisdiction in this case is based upon 28 U.S.C. §§ 1331 and 1338, 15 U.S.C. § 1125(a), 28 U.S.C. § 1367(a), 28 U.S.C. §§ 2201 and 2202. The Court finds there is personal jurisdiction over Bartell and Darragh, and that venue properly lies in this district.

### B. *'510 Patent*

The features of the '510 design patent are primarily functional. A design is deemed functional if the appearance of the claimed design is "dictated by" the use or purpose of the article. *Power Controls Corp. v. Hybrinetics, Inc.,* 806 F.2d 234,

238 (Fed.Cir.1986). A combination of functional items cannot be patentable, no matter how aesthetic the resulting structure. *Best Lock Corp. v. Ilco Unican Corp.,* 94 F.3d 1563, 1567 (Fed.Cir.1996).

The Federal Circuit has applied a two-pronged test that must be satisfied in order to find infringement of a design patent: the ordinary observer test and the point of novelty test. *Litton Sys., Inc. v. Whirlpool Corp.,* 728 F.2d 1423, 1444 (Fed. Cir.1984). Due to the finding of facts previously made, *supra,* the Court concludes that under this two-pronged test the Bartell trowel does not infringe upon the '510 patent.

### C. '220 Patent

█ It is well established under the law that a patent and each of its claims are presumed valid and enforceable. 35 U.S.C. § 282. The statutory presumption of validity imposes a strict burden of persuasion on the one attacking a patent's validity. In the cases of enforcement of a patent, the burden is one of clear and convincing evidence for the party contending the patent's invalidity. *Bausch & Lomb, Inc. v. Barnes–Hind/Hydrocurve, Inc.* 796 F.2d 443 (Fed.Cir.1986), *cert. denied,* 484 U.S. 823, 108 S.Ct. 85, 98 L.Ed.2d 47 (1987). Therefore, the Court finds that such presumptions operate in favor of Allen in the case of its '220 patent.

Allen must establish that the patent claims asserted to be infringed are found in the Bartell trowel, either literally or by an equivalent by a preponderance of the evidence. *SmithKline Diagnostics, Inc. v. Helena Lab. Corp.,* 859 F.2d 878, 889 (Fed. Cir.1988) (citation omitted).

█ There are two recognized forms of patent infringement. First, literal infringement requires that the patent claims, as construed by the Court, exist in the Bartell riding trowel. *Read Corp. v. Portec, Inc.,* 970 F.2d 816, 821 (Fed.Cir.1992). Second, the doctrine of equivalents allows a finding of infringement, despite a lack of literal infringement, where the differences between the patented invention and the accused product are not material. *Id.; Hilton Davis Chem. Co. v. Warner–Jenkinson Co., Inc.,* 62 F.3d 1512, 1521–22 (Fed.Cir.1995), *rev'd,* 520 U.S. 17, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). In order to establish infringement by equivalence, the infringing product must perform substantially the same function in substantially the same way to achieve substantially the same result. *Graver Tank & Mfg. Co. v. Linde Air Products Co.,* 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

█ In considering this issue, the Court must first construe the claims which Allen asserts have been infringed, and then it must compare the properly construed claims to the allegedly infringing Bartell trowel. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir. 1995), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). In its construction of the patent, this Court is to view the claims at issue in light of the specifications, and in a manner that preserves their validity, if at all possible. *ACS Hosp. Sys., Inc. v. Montefiore Hosp.,* 732 F.2d 1572, 1577 (Fed.Cir.1984). In determining infringement, the Court may also take into consideration other secondary matters such as an existing need for the invention at issue, the resulting commercial success of the invention once produced for sale, other available devices, and whether the invention in question was copied. *Graham v. John Deere Co. of Kansas City,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Based upon this Court's findings of fact, the Court concludes that the Bartell trowel # 1 directly infringes on the '220 patent, and the Bartell trowel # 2 infringes upon the '220 patent through equivalent means.

Bartell and Darragh have raised numerous defenses in the face of Plaintiff's contention that they have infringed upon the '220 patent, but the Court finds none of Defendants' arguments persuasive. The Court will specifically address, *infra,* Defendants' averments that Allen did not

properly mark its trowels with patent identification information, and that Allen prosecuted its claim before the Patent and Trademark office in an inequitable manner.

▇ Although Bartell and Darragh contend that no damages should be awarded because Allen failed to properly mark the riding trowels with patent identification labels as required by 35 U.S.C. § 287(a), the Court finds no merit to this argument. The Court finds that a typographical error did exist in the original notice sticker displayed on the Allen trowel upon the issuance of the patents; however, this error was not material and damages are appropriate from the date of Bartell first copied Allen's patented trowel and from the date Darragh began selling Bartell's infringing trowels. *Bonito Boats Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989).

▇ Defendants also contend that Allen's patent is unenforceable based upon Allen's inequitable conduct before the Patent and Trademark Office (hereinafter "PTO"). In essence, Defendants aver that Plaintiff deceived and misled the PTO's examiners by withholding information, especially prior art, surrounding the development of riding trowels around the world. However, a heavy burden of proof exists which requires proof by clear and convincing evidence that material information was intentionally withheld by the applicants in this case for the express purpose of misleading or deceiving the patent examiner. *Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed.Cir. 1988), *cert. denied*, 490 U.S. 1067, 109 S.Ct. 2068, 104 L.Ed.2d 633 (1989). A finding of deceptive intent cannot be based upon mere inference, or even on gross negligence. There must be "conduct, viewed in light of all the evidence, including evidence indicative of good faith, [that] must indicate sufficient culpability to require a finding of intent to deceive." *Id.* at 876. Intent to deceive cannot be inferred solely

from the fact that information was not disclosed. Instead, there must be a firm factual basis for a finding of deceptive intent. *Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 822 (Fed.Cir.1992).

Defendants' argument places the total responsibility of locating prior art on the applicant. The Court concludes that Defendants have pointed to nothing that would justify reliance on counsel's candor as a substitute for a patent examiner's duty to examine the claims. *Kingsdown*, 863 F.2d at 874 n. 8. The Court finds that an appropriate examination was conducted at the time the patent applications at issue were presented to the PTO which supports their issuance.

Moreover, as the Court has found that the Red Rider was an experimental model which never reached completion, it further finds that the inventors of the Red Rider were not required to disclose its development because the issue was not material for purposes of obtaining either the '220 or '510 patents. Further, the Court finds that developments in the Red Rider did not become public information because they were exploratory in nature. The burden of establishing public use is upon the party attacking the validity of the patent on that particular issue. *TP Lab., Inc. v. Professional Positioners, Inc.*, 724 F.2d 965, 971 (Fed.Cir.1984).

The Court notes that the on-sale bar of section 102(b) represents a balancing of policies between allowing an inventor a reasonable amount of time to ascertain the commercial value of an invention and requiring prompt entry into the patent system after final product sales activity has begun. *See Envirotech Corp. v. Westech Eng'g., Inc.*, 904 F.2d 1571, 1574 (Fed.Cir. 1990). Public use under section 102(b) does not start the one-year period until the invention has left the experimental stage. *Manville Sales Corp. v. Paramount Sys. Inc.*, 917 F.2d 544, 551 (Fed.Cir.1990).

Based upon its findings of fact, the Court concludes that Defendants have not

made a sufficient factual showing of deception on Allen's part in its application process for the '220 and '510 patent vis-a-vis the PTO.

### C. Lanham Act violation

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), prohibits false designations of goods or services which are likely to cause confusion. *Insty*Bit, Inc. v. Poly–Tech Indus., Inc.*, 95 F.3d 663, 667 (8th Cir.1996), *cert. denied*, 519 U.S. 1151, 117 S.Ct. 1085, 137 L.Ed.2d 219 (1997). In addressing these issues, this Court defers to the law of the Eighth Circuit, as these trade dress issues are not unique to the exclusive jurisdiction of the Federal Circuit. *Imagineering, Inc. v. Van Klassens, Inc.*, 53 F.3d 1260, 1263 (Fed.Cir.), *cert. denied*, 516 U.S. 909, 116 S.Ct. 277, 133 L.Ed.2d 197 (1995). However, the Federal Circuit will have appellate jurisdiction over these claims brought under the Lanham Act as they are pendant claims under the Patent Act. 28 U.S.C. § 1295(a)(1) (1998); *id.* The issue presented in a section 1125(a) unfair competition claim is whether Defendants' actions are likely to cause confusion, to cause a mistake, or to deceive. 15 U.S.C. § 1114(1); *SquirtCo v. Seven–Up Co.*, 628 F.2d 1086, 1090–91 (8th Cir. 1980).

As the Court has found that there are conspicuous color and labeling differences between the two trowels at issue, and as the Bartell trowel has both its brand name and trademark logo prominently displayed, the Court does not find a violation of the Lanham Act. *See Litton Sys. v. Whirlpool Corp.*, 728 F.2d 1423, 1446 (Fed.Cir.1984).

All other claims initially raised by Plaintiff in its Complaint are dismissed, as same were not addressed in its post-trial brief.

### III. *Damages*

Due to the Court's findings, Plaintiff is entitled to the immediate issuance of permanent injunctive relief against Defendants prohibiting their distribution, marketing, and selling of infringing products. Plaintiff is also entitled to an award of damages pursuant to 35 U.S.C. §§ 284 and 289 based upon Defendants' infringing sales, restoration of gains and profits derived from infringing actions, and treble damages based upon Defendants' willful and knowing actions in reckless disregard of Plaintiff's rights. The Court will defer the issue of computation of damages for a subsequent hearing. Said hearing will be conducted by Magistrate Judge Jerry W. Cavaneau pursuant to 28 U.S.C. § 636(b)(1)(B) at his convenience, and this Court will review his findings and recommendations regarding damages once completed.